14271

ORR v. JEFFCOAT

(185 S. E., 41)

May, 1935.

*Mr. Wm. A. Gunter,* for appellant,

*Mr. S. M. Busby,* for respondent.

April 6, 1936.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

In March, 1935, an action between the respondent and appellant was brought in the Court of Magistrate Frank L.

Taylor for Richland County, and on May 15 was tried by the magistrate and a jury, and verdict rendered for the defendant in that action, who is the appellant here. A motion for new trial was made by plaintiff before the magistrate, supported by affidavits predicated on the allegations "that undue and illegal influence was used and attempted to be used by the defendant on the Court and jury before the trial of the case."

The magistrate refused to grant the motion.

The plaintiff appealed to the County Court of Richland, where Judge A. W. Holman considered the matter upon the same affidavits upon which the magistrate had based his action, and reversed the order of the magistrate and remanded the case for a new trial. From this order the appeal comes.

The appeal to the County Court was heard upon the same affidavits which were submitted to the magistrate. There are two on behalf of the plaintiff, Orr, and two on behalf of the defendant, Jeffcoat. Both of those for the plaintiff are made by W. E. Taylor. In the first affidavit, deponent states that on the morning of May 15, 1935, he saw D. D. Jeffcoat, who lives in Columbia, at Arden, in Upper township of Richland County, "talking to one of the jurors who had been summoned in the case of *S. A. Orr v. D. D. Jeffcoat,* and who tried the case." It appears elsewhere in the record that the case was tried the afternoon of May 15th.

In his second affidavit deponent states : "That he is constable for Magistrate Frank Taylor of Upper Township, Richland County, South Carolina. * * * that the case of *S. A. Orr v. D. D. Jeffcoat* was transferred from the Court of Magistrate Ollie Mefford to Magistrate Frank Taylor, and that a jury was demanded by the defendant * * * that before the jury was summoned the said defendant D. D. Jeffcoat approached this deponent and offered to pay him $3.00 if deponent would allow him—Jeffcoat—to select said jurors * * * that deponent refused

to accept the offer  *  *  *  and did not mention the matter to the parties or their attorneys until after the trial."

For the defendant appear two affidavits; one by Henry Keisler and the other by Jeffcoat himself.

Keisler deposes that: "He is a resident of Arden; that on the morning of May 15, 1935, he was on Wilson Boulevard with J. A. Carman,  *  *  *  that Mr. D. D. Jeffcoat stopped and conferred with him  *  *  *  about some work he was doing for deponent as an agent of Warwick's Dry Cleaning Co.,  *  *  *  that the only conversation between the parties was between deponent and Mr. Jeffcoat.  *  *  *  There was no conversation between Jeffcoat and Carman in reference to a suit about a dog, or any other business."

It is significant that no affidavit appeared from Carman, who, it seems, is the juror alleged to have been approached by Jeffcoat.

In his affidavit Jeffcoat says: "That he did not have any conversation with any of the jurors named for trial of the above entitled case on May 15, 1935,  *  *  *  that he makes this affidavit because he is informed  *  *  *  that W. E. Taylor has made an affidavit,  *  *  *  wherein he states that he saw this deponent talking to one of the jurors who had been summoned in the case.  *  *  *  That he engaged in a conversation with Harry Keisler in the presence of John A Carman, one of the jurors, on the said day, that the only conversation was between deponent and Keisler in reference to some dry cleaning work being done for Keisler. That nothing was said to Mr. Carman about the case.  *  *  *  Deponent denies that he offered to pay W. E. Taylor $3.00 or any other sum to allow deponent to select the jurors  *  *  *  that upon accosting Taylor, since he made the affidavit dated May 20, 1935, Taylor asserted to him that he did not intend to accuse him of bribery, or improper practice  *  *  *  that what he had intended to say by affidavit was that Jeffcoat had offered to pay him $3.00 to carefully select and empanel a jury of good citizens upon whom he could rely to render judgment without prejudice

and according to the law and the evidence. That he offered to Taylor a proposed affidavit (a copy of which appears in the record embodying this statement), which Taylor refused to sign."

The unsigned affidavit has no place in the record; it has no probative value. If, as Mr. Jeffcoat deposes, he said nothing to any of the jurors about the case, it would have been easy to submit their affidavits confirming his statement.

It does not need to consider anything more than the affidavit of Jeffcoat himself to see that he has been guilty of reprehensible conduct. He seeks to explain his conduct by saying that he offered the constable $3.00 only for the purpose of having him summons good citizens upon whom he could rely to render a true verdict according to the law and the evidence. The law prescribes the method by which jurors shall be drawn and summoned. It prescribes the character of jurors to be drawn. Any effort to influence the officer charged with these duties is worthy of the gravest censure. If the right of trial by jury, inherited by us from the common law and embodied in our Federal and State Constitutions, is to remain the bulwark and protection of the lives and liberties, the rights of person and property of the people, its administration must remain, as was demanded of Caesar's wife that she be, always above suspicion.

We are in full accord with the order of Judge Holman.

Let it be reported.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES. CARTER, BAKER and FISHBURNE concur.